# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE LUIS HERNANDEZ CARO,<br>Petitioner,<br>v.<br>DEPARTMENT OF HOMELAND SECURITY,<br>Respondent. | Case No. 1:26-cv-06444-JLT-EPG-HC<br>FINDINGS AND RECOMMENDATION TO GRANT PETITION FOR WRIT OF HABEAS CORPUS AND DIRECT RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER |

Petitioner is a federal immigration detainee proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. For the reasons set forth herein, the undersigned recommends that the petition for writ of habeas corpus be granted and Respondents be directed to immediately release Petitioner.

## I.

## BACKGROUND

Petitioner is a citizen of Cuba who was ordered removed by an immigration judge ("IJ") on June 19, 2008. (ECF No. 1 at 7; ECF No. 6 at 22–23.[1]) Petitioner was placed on an Order of Supervision ("OSUP") before he was re-detained by U.S. Immigration and Customs Enforcement ("ICE") on February 10, 2026. (ECF No. 6 at 6; ECF No. 10 at 4–8.)

On May 22, 2026, Petitioner filed his first petition for writ of habeas corpus in the United States District Court for the Middle District of Florida. On June 18, 2026, the district court

[1] Page numbers refer to ECF page numbers stamped at the top of the page.

denied the petition without prejudice to refiling a new petition should Petitioner's current detention exceed six months and Petitioner can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. (ECF No. 6 at 6–10.)

On June 16, 2026, Petitioner was served a Notice to Alien of File Custody Review that stated Petitioner's custody status was to be reviewed that day, informed Petitioner of his requirement to cooperate in his removal, advised that consideration of release on an OSUP depended on Petitioner's demonstration that he does not pose as a danger to the community and will not present a flight risk, and informed Petitioner that he could submit documents in support of his release and that a deciding official would notify him of the decision. (ECF No. 6 at 25.) Petitioner refused to sign the form. (Id. at 26.)

On June 20, 2026, the Department of Homeland Security ("DHS") served Petitioner a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g) informing Petitioner that because he failed to assist immigration authorities in obtaining a travel document, 8 U.S.C. § 241(a)(1)(C) permits DHS to extend his removal period. (ECF No. 6 at 28.) Petitioner refused to sign the form. (Id. at 29.) That same day, Petitioner was served with a Decision to Continue Detention because he posed a danger to the community, to the safety of other persons, or to property, and posed a significant risk of flight pending removal from the United States. (Id. at 31–33.)

On August 13, 2026, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On September 8, 2026, Respondent filed a response. (ECF No. 6.) Per the Court's order, (ECF No. 9), Respondent filed a supplemental brief on October 19, 2026, (ECF No. 10).

## II.

## DISCUSSION

Although the deadline for Petitioner to file a supplemental brief has not yet passed, the undersigned finds that issuance of the findings and recommendation is appropriate.

### A. Statutory Authority for Petitioner's Detention

Congress has enacted a complex statutory scheme governing the detention of noncitizens during removal proceedings and following the issuance of a final order of removal. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or

discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Section 241(a) of the Immigration and Nationality Act (INA), codified at 8 U.S.C. § 1231(a), authorizes the detention of noncitizens who have been ordered removed from the United States." Johnson v. Arteaga-Martinez, 596 U.S. 573, 575 (2022). "After the entry of a final order of removal against a noncitizen, the Government generally must secure the noncitizen's removal during a 90-day 'removal period.' § 1231(a)(1)(A). The statute provides that the Government 'shall' detain noncitizens during the statutory removal period. § 1231(a)(2)."[2] Id. at 578 (some internal quotation marks omitted).

> Under § 1231, the removal period may be extended in at least three circumstances, such that an alien remains detained after 90 days have passed. First, the removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal. § 1231(a)(1)(C). Second, DHS may stay the immediate removal of certain aliens if it decides that such removal is not practicable or proper, or if the alien is needed to testify in a pending prosecution. § 1231(c)(2)(A). And finally, the statute provides that an alien may be detained beyond the removal period or released under supervision if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order. § 1231(a)(6); see also 8 CFR § 241.4 (setting out procedures DHS must follow to impose continued detention). Continued detention under this provision creates the "post-removal-period."

Johnson v. Guzman Chavez, 594 U.S. 523, 528–29 (2021).

To the extent Respondents contend that Petitioner's refusal to cooperate extended the removal period pursuant to 8 U.S.C. § 1231(a)(1)(C), (ECF No. 10 at 2), the Court is not persuaded by Respondents' argument. Despite being ordered to provide supplemental briefing and supporting documentation on Petitioner's alleged non-cooperation because the response "does not explain or provide a declaration regarding in what manner Petitioner failed to assist

[2] "This 'removal period' begins on the latest of either (1) the date a noncitizen's 'order of removal becomes administratively final,' (2) the date of a court's final order, if the noncitizen's removal order is judicially reviewed and this court stays the noncitizen's removal, or (3) the date the noncitizen is released from criminal detention or confinement." Avilez v. Garland, 69 F.4th 525, 531 (9th Cir. 2023) (citing 8 U.S.C. § 1231(a)(1)(B)).

immigration authorities," (ECF No. 9 at 3), the supplement merely attaches a copy of the Form I-229(a) Warning for Failure to Depart that Petitioner refused to sign, (ECF No. 10 at 11–12). Respondent contends that "ICE is without a travel document as of the date of filing this supplemental response in light of the documentary evidence that Petitioner has not complied with his obligations to secure a travel document." (ECF No. 10 at 2.) However, "[c]ourts around the country, including this district, have [recognized] Cuba's unwillingness to repatriate U.S. deportees," Cabrera v. Senior Warden, Adelanto Det. Facility, No. 5:26-CV-03073-HDV-RAO, 2026 WL 2249486, at *3 (C.D. Cal. Aug. 3, 2026), and given the lack of explanation and specificity regarding Petitioner's alleged failure to assist in securing a travel document, the undersigned recommends finding that 8 U.S.C. § 1231(a)(1)(C) is not applicable, Petitioner is not subject to mandatory detention during an extended period under § 1231(a)(2), and Petitioner is subject to discretionary detention under § 1231(a)(6).

**B. Zadvydas**

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court addressed a challenge to prolonged detention under § 1231(a)(6) by noncitizens who "had been ordered removed by the government and all administrative and judicial review was exhausted, but their removal could not be effectuated because their designated countries either refused to accept them or the United States lacked a repatriation treaty with the receiving country." Prieto–Romero, 534 F.3d at 1062 (citing Zadvydas, 533 U.S. at 684–86). The Supreme Court "read an implicit limitation" into the statute "in light of the Constitution's demands," holding that § 1231(a)(6) does not authorize indefinite detention and "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689.

> After [a presumptively reasonable] 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the

> contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

Zadvydas, 533 U.S. at 701.

Respondents argue that although six months have lapsed since Petitioner was detained in February 2026, Petitioner has not met his burden to show good cause to believe there is no significant likelihood of removal in the reasonably foreseeable future. (ECF No. 6 at 4.) However, the six-month presumptively reasonable detention period and "the burden-shifting framework from *Zadvydas* does not apply" to challenges to "ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Yan-Ling X. v. Lyons, 813 F. Supp. 3d 1157, 1163 (E.D. Cal. 2025) (alterations in original) (quoting Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025)). "[T]his is not your typical first round detainment of an alien awaiting removal," whereas Zadvydas "dealt with the initial detainment of an alien awaiting removal." Escalante v. Noem, No. 9:25-CV-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025).

**C. Revocation of Order of Supervision**

"Specific regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed." Yan-Ling X., 813 F. Supp. 3d at 1162. 8 C.F.R. § 241.13(i) provides in pertinent part:

> (1) Violation of conditions of release. Any alien who has been released under an order of supervision under this section who violates any of the conditions of release may be returned to custody and is subject to the penalties described in section 243(b) of the Act. In suitable cases, the HQPDU shall refer the case to the appropriate U.S. Attorney for criminal prosecution. The alien may be continued in detention for an additional six months in order to effect the alien's removal, if possible, and to effect the conditions under which the alien had been released.
>
> (2) Revocation for removal. The Service may revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future. Thereafter, if the alien is not released from custody following the informal interview provided for in paragraph (h)(3) of this section, the provisions of § 241.4 shall govern the alien's continued detention pending removal.

> (3) Revocation procedures. Upon revocation, the alien will be notified of the reasons for revocation of his or her release. The Service will conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification. The alien may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision. The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release.

8 C.F.R. § 241.13(i)(1)–(3).

8 C.F.R. § 241.4(b)(4) provides:

> Service determination under 8 CFR 241.13. The custody review procedures in this section do not apply after the Service has made a determination, pursuant to the procedures provided in 8 CFR 241.13, that there is no significant likelihood that an alien under a final order of removal can be removed in the reasonably foreseeable future. However, if the Service subsequently determines, because of a change of circumstances, that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future to the country to which the alien was ordered removed or to a third country, the alien shall again be subject to the custody review procedures under this section.

8 C.F.R. § 241.4(b)(4). With regard to revocation, 8 C.F.R. § 241.4(*l*) provides in pertinent part:

> (1) Violation of conditions of release. Any alien described in paragraph (a) or (b)(1) of this section who has been released under an order of supervision or other conditions of release who violates the conditions of release may be returned to custody. Any such alien who violates the conditions of an order of supervision is subject to the penalties described in section 243(b) of the Act. Upon revocation, the alien will be notified of the reasons for revocation of his or her release or parole. The alien will be afforded an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification.
>
> (2) Determination by the Service. The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. Release may be revoked in the exercise of discretion when, in the opinion of the revoking official:
>
> (i) The purposes of release have been served;

> (ii) The alien violates any condition of release;
> (iii) It is appropriate to enforce a removal order or to commence removal proceedings against an alien; or
> (iv) The conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate.[3]

8 C.F.R. § 241.4(*l*)(1)–(2).

1. Notice and Informal Interview

Petitioner asserts that "ICE failed to comply with regulations which only allow the executive associate commissioner to revoke an [OSUP], and requires ICE to provide him with notice of the reason for the revocation of his [OSUP], and an opportunity to respond in an informal interview." (ECF No. 1 at 6.) Respondent states that they are "without information to properly address Petitioner's OSUP revocation." (ECF No. 10 at 1.) There is nothing in the record before this Court demonstrating that Respondents provided notice or an informal interview as required by 8 C.F.R. §§ 241.13(i) and 241.4(*l*). Accordingly, the undersigned recommends finding that Petitioner is entitled to habeas relief on this ground. See Hoac v. Becerra, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Because there is no indication that an informal interview was provided to Petitioner, the court finds Petitioner is likely to succeed on his claim that his re-detainment was unlawful."); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 20, 2025) (finding that "failure to provide an informal hearing is alone sufficient to entitle petitioner to the requested" relief of release from custody).

2. Change of Circumstances

The "regulations at 8 C.F.R. §§ 241.13(i) and 241.4(l) apply to non-citizens in petitioner's situation and outline the process to be followed," including that "when ICE revokes release to effectuate removal, 'it is [ICE's] burden to show a significant likelihood that the alien may be removed.'" Yan-Ling X., 813 F. Supp. 3d at 1163 (alteration in original) (quoting

---

[3] Although "DHS has asserted in other litigation that the notice [and interview] requirements set forth in 8 C.F.R. § 241.4(l)(1) do not constrain revocation of release pursuant to § 241.4(l)(2), several district courts have rejected that argument." Khamba v. Albarran, No. 1:25-cv-01227 JLT SKO, 2025 WL 2959276, at *8 n.13 (E.D. Cal. Oct. 17, 2025) (collecting cases and "agree[ing] with those decisions that the notice and interview requirements apply to anyone whose supervision has been revoked pursuant to 8 C.F.R. § 241.4(l)(1) or (2)."

Escalante, 2025 WL 2206113, at *3) (citing Roble v. Bondi, No. 25-cv-3196 (LMP/LIB), 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future."); Abuelhawa v. Noem, No. 4:25-cv-04128, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."); Nguyen, 788 F. Supp. 3d at 150).

Petitioner asserts that his re-detention without any showing of changed circumstances is entirely arbitrary. (ECF No. 1 at 6.) Respondents merely state that "[w]ith Petitioner's compliance, removal is likely." (ECF No. 10 at 2.) Respondents provide no evidence regarding what steps they have taken and will take to remove Petitioner from the United States. Accordingly, Respondents have failed to satisfy their burden that changed circumstances have made Petitioner's removal significantly likely in the reasonably foreseeable future. Accordingly, the undersigned recommends finding that Petitioner is entitled to habeas relief on this ground.

**D. Remedy**

"Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319 (1995).

1. Immediate Release

Based on the foregoing, the undersigned recommends finding that Petitioner's re-detention was unlawful and his immediate release from custody is warranted. See Nguyen, 788 F. Supp. at 152–53 ("ICE's individualized determination to re-detain Mr. Nguyen is not in compliance with 8 C.F.R. § 241.13(f), (i)(2)" and "[b]ased on ICE's violations of its own regulations, I conclude that Mr. Nguyen's detention is unlawful and that his release is appropriate."); Liu v. Carter, No. 25-3036-JWL, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("Accordingly, the Court concludes that because officials did not properly revoke

petitioner's release pursuant to the applicable regulations, that revocation has no effect, and petitioner is entitled to his release (subject to the same Order of Supervision that governed his most recent release)."); Yan-Ling X., 813 F. Supp. 3d at 1167 ("Petitioner has shown that she is likely to succeed on her claim that ICE did not have sufficient grounds to re-detain her under the regulations, and that her re-detention was therefore unlawful. Her immediate release is required to return her to the status quo ante.").

2. Pre-Deprivation Hearing

"[M]any courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest." Huang v. Albarran, 818 F. Supp. 3d 1154, 1166 (E.D. Cal. 2026) (citing J.L.R.P. v. Wofford, No. 1:25-cv-01464-KES-SKO (HC), 2025 WL 3190589, at *8–10 (E.D. Cal. Nov. 14, 2025); Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3–5 (N.D. Cal. Aug. 21, 2025)). Applying the Mathews v. Eldridge, 424 U.S. 319 (1976), factors, the J.L.R.P. court "found that the petitioner was entitled to a bond hearing prior to re-detention because":

> (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs.

Huang, 818 F. Supp. 3d at 1166 (citing J.L.R.P., 2025 WL 3190589, at *9–10). "Similarly, in *Alva*, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing." Huang, 818 F. Supp. 3d at 1166 (citing Alva, 2025 WL 2419262, at *3–5). Likewise, in Huang, the court found a due process violation where the government detained the petitioner with a final order of removal, released on OSUP for nearly seven and a half years, without a pre-deprivation hearing. Huang, 818 F. Supp. 3d at 1166–67.

\\\

## III.

## RECOMMENDATION

Accordingly, the undersigned HEREBY RECOMMENDS that:

1. The petition for writ of habeas corpus be GRANTED.
2. Respondents be directed to immediately release Petitioner from custody under the conditions of his most recent order of supervision.
3. Respondents be enjoined and restrained from re-detaining Petitioner pursuant to 8 C.F.R. § 241.13(i)(2) unless there are material changed circumstances and a neutral decisionmaker determines that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within **FOURTEEN (14) days** after service of the Findings and Recommendation, any party may file written objections, **no longer than fifteen (15) pages, including exhibits**, with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within fourteen (14) days after service of the objections. The assigned United States District Court Judge will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **October 22, 2026**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE